**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| BRITTANY EADY,<br><br>    *Plaintiff,*<br><br> v.<br><br>TRULY ORIGINAL, LLC, and BRAVO MEDIA LLC,<br><br>    *Defendants.* | Case No. 1:25-cv-09683-JLR |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

JACKSON LEWIS P.C.
Dana G. Weisbrod, Esq.
Paige C. Goldberg, Esq.
666 Third Avenue, 28th Fl
New York, NY 10017
Telephone: (212) 545-4000
Facsimile: (212) 972-3213 (Fax)
Dana.Weisbrod@jacksonlewis.com
Paige.Goldberg@jacksonlewis.com

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 1

A.     THE NYSHRL AND NYCHRL DO NOT GOVERN (COUNTS I, II, IV-V). ............................................................................................................... 1

     i.     Plaintiff Misreads Controlling Authority. ................................................ 1

     ii.    Plaintiff's Cited Authority Cannot Support Her Position. ....................... 2

B.     THE ATLANTA ORDINANCE IS NOT SILENT AS TO RELIEF (COUNTS III AND VI). ...................................................................................... 4

C.     PLAINTIFF SEXUAL HARASSMENT CLAIMS LACK MERIT (COUNTS I-III). .................................................................................................. 5

     i.     Plaintiff Improperly Relies on Title VII and FLSA Cases. .................... 5

     ii.    Revenge Pornography Is a Criminal Act, Not Actionable Workplace Harassment, and Plaintiff Fails to Allege Harassment "Because of Sex." ..................................................... 6

D.     PLAINTIFF'S CONTRACT CLAIMS FAIL (COUNTS VII-VIII). ............................... 6

E.     PLAINTIFF MISSTATES RATIFICATION TO ESTABLISH VICARIOUS LIABILITY UNDER GEORGIA LAW (COUNTS I-IX AND X). .......................................................................................................... 7

F.     PLAINTIFF'S IIED CLAIM FAILS (COUNT X). ........................................................ 8

     i.     Plaintiff Concedes New York Law Does Not Apply. ............................. 8

     ii.    Plaintiff Misapplies Georgia Precedent. ................................................ 8

     iii.   Plaintiff's "Contributing Factor" Theory Is Irrelevant. ......................... 9

G.     PLAINTIFF FAILS TO OVERCOME THE EXPRESS ASSUMPTION OF RISK AND CONTRACTUAL RELEASE (COUNTS IX-X). ........................................................................................................ 9

     i.     The Talent Agreement Covers IIED. ................................................... 10

     ii.    Plaintiff's Authority Does Not Address Express Waivers or Comparable Releases. ........................................................................ 10

iii.    Plaintiff Ignores Precedent Upholding Comparable Releases............................................................................................ 11

iv.    Assumption of Risk Informs What Is "Outrageous," Harassing," or "Unforeseeable."................................................... 11

v.    O.C.G.A. § 34-7-22 Does Not Void the Release. ................................................. 12

CONCLUSION............................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Arbegast v. Bd. of Educ. of S. New Berlin Cent. Sch.*,
65 N.Y.2d 161 (1985) ................................................................................................10

*Chen-Oyster v. Goldman*,
251 F. Supp. 579 (S.D.N.Y. April 12, 2017) ...........................................................3

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*,
81 N.Y.2d 821 (1993) ................................................................................................11

*Desiderio v. Hudson Technologies*,
2023 U.S. Dist. LEXIS 6880 (S.D.N.Y. Jan. 13, 2023)........................................2, 3

*Diaz-Roa v. Hermes L.*,
757 F. Supp. 3d 498 (S.D.N.Y. 2024)........................................................................3

*Farzaneh v. Merit Constr. Co.*,
309 Ga. App. 637 (2011) ...........................................................................................6

*Garcia v. ROC Nation*,
2025 U.S. Dist. LEXIS 129459 (S.D.N.Y. July 2, 2025) .........................................3

*Heiman v. Mayfield*,
300 Ga. App. 879 (2009) ...........................................................................................11

*Hoffman v. Parade Publishing*,
15 N.Y.3d 285 (2010) ............................................................................................1, 2

*John Crane, Inc. v. Jones*,
278 Ga. 747 (2004) ....................................................................................................9

*Johnson v. Everyrealm*,
657 F. Supp. 3d 535 (S.D.N.Y 2023)........................................................................3

*Kraiem v. JonesTrading Institutional Servs. LLC.*,
492 F. Supp. 3d 184 (S.D.N.Y. 2020).....................................................................3, 4

*Lively v. McDaniel*,
240 Ga. App. 132 (1999) ...........................................................................................9

*Lynch v. Javara, Inc.*,
2025 U.S. Dist. LEXIS 107062 (N.D. Ga. June 5, 2025).........................................11

*Maas v. Cornell Univ.*,
94 N.Y.2d 87 (1999)...................................................................................................7

*Padula v. Lilarn Properties Corp.*,
    84 N.Y.2d 519 (N.Y. 1994) ..................................................................................8

*Reid v. Waste Indus. USA, Inc.*,
    345 Ga. App. 236 (2018) ....................................................................................9

*Schaffer v. GeneDx*,
    2026 U.S. Dist. LEXIS 22577 (S.D.N.Y. Jan. 30, 2026)......................................3

*Sevcech v. Ingles Markets, Inc.*,
    222 Ga. App. 221 (1996) ..................................................................................8, 9

*Syeed v. Bloomberg L.P.*,
    41 N.Y.3d 446 (2024) .........................................................................................2

*Wade v. Findlay Mgmt.*,
    253 Ga. App. 688 (2002) .....................................................................................6

**Statutes**

Atlanta Code of Ordinances, Sec. 94-120, 120(o) ............................................................4

O.C.G.A. § 34-7-22............................................................................................................12

**Other Authorities**

https://court.atlantaga.gov/faqs .......................................................................................4

Defendants submit this Reply in support of their Motion to Dismiss.

## PRELIMINARY STATEMENT

Plaintiff's opposition confirms her claims are untenable. *First,* Plaintiff cannot satisfy the NYSHRL or NYCHRL impact requirement, misreading controlling authority and relying on distinguishable cases. *Second*, Plaintiff's Atlanta Code of Ordinances claims fail because the Ordinance limits enforcement and relief. *Third*, Plaintiff relies on Title VII and FLSA authority to improperly reframe alleged criminal third-party conduct as employer-actionable harassment. *Fourth*, the cases Plaintiff cites in support of her contract claims do not support treating amendable workplace policies as enforceable contracts. *Fifth*, Plaintiff cannot plausibly allege vicarious liability or ratification under Georgia law. *Sixth*, Plaintiff's IIED claim fails where she concedes New York law does not apply, misreads Georgia authority and cannot establish proximate cause. *Finally*, Plaintiff cannot overcome the express assumption of risk and contractual release she indisputably accepted, further foreclosing her claims.

Viewed through any lens, the Complaint should be dismissed in its entirety.

## ARGUMENT

### A.  THE NYSHRL AND NYCHRL DO NOT GOVERN (COUNTS I, II, IV-V).

Plaintiff fails to satisfy the statutory impact requirement. She misreads controlling authority and relies on distinguishable cases. Her claims should be dismissed.

#### i.  Plaintiff Misreads Controlling Authority.

The NYSHRL and NYCHRL apply to non-resident plaintiffs only where the alleged discriminatory or retaliatory conduct had a cognizable impact within New York. *See Hoffman v. Parade Publishing*, 15 N.Y.3d 285 (2010). This requirement ensures that New York's human-rights laws protect only those actually working in New York and are not extended to claims —as here—with incidental New York connections.

1

Confronted with this limitation, Plaintiff misreads *Hoffman* in an effort to expand it. Specifically, Plaintiff relies on language from the dissent and arguments advanced by counsel. Indeed, Plaintiff erroneously asserts *Hoffman* established a jurisdictional threshold requiring "some" or "any" impact in New York. That formulation mischaracterizes the court's holding. The *Hoffman* majority did not announce a rule that any minimal or trivial impact suffices. Rather, the court used the word "any" in explaining why the plaintiff's claim failed—held the plaintiff "failed to state a claim that the alleged discriminatory conduct had any impact in [New York]." *Id*. That language underscores the absence of a cognizable New York impact. It does not lower the threshold. Plaintiff's reliance on an isolated word improperly reads *Hoffman* to say more than it does.

Plaintiff similarly misapplies *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (2024). The *Syeed* court explicitly relied on *Hoffman* and applied the same impact test, rejecting the notion that a trivial or attenuated connection suffices. *Id.* at 451-452. The court held the plaintiff "failed to allege that the purported discrimination 'had any impact in New York[.]'" This confirms the relevant inquiry is whether the plaintiff plausibly alleges a legally cognizable discriminatory impact in New York, not whether she identified some abstract or minimal connection. *Id.*, 452. Read properly, *Syeed* reinforces *Hoffman*'s limitation on the reach of the statutes and refutes Plaintiff's position.

### ii.    Plaintiff's Cited Authority Cannot Support Her Position.

Plaintiff cannot establish the in-state impact required under the statutes. Her cited cases—with materially different facts—are distinguishable:

- *Desiderio v. Hudson Technologies*, 2023 U.S. Dist. LEXIS 6880 (S.D.N.Y. Jan. 13, 2023). The plaintiff began employment at a New York office and, after

shifting to remote work from Florida during the pandemic, continued to travel to NY multiple times for work. *Id.*, *2.

- *Diaz-Roa v. Hermes L.*, 757 F. Supp. 3d 498 (S.D.N.Y. 2024). The Plaintiff lived in NYC and worked remotely from NYC for a Texas law firm. *Id.*, 517.

- *Johnson v. Everyrealm*, 657 F. Supp. 3d 535 (S.D.N.Y. 2023). The Nevada resident plaintiff was regularly assigned to the NYC office at least two weeks per month and made additional work trips to NY. *Id.*, 542-543.

- *Schaffer v. GeneDx,* 2026 U.S. Dist. LEXIS 22577 (S.D.N.Y. Jan. 30, 2026). The plaintiff was "regularly required . . . to report in person to [d]efendants' [NYC] Office." *Id.*, *56.

- *Garcia v. ROC Nation*, 2025 U.S. Dist. LEXIS 129459 (S.D.N.Y. July 2, 2025). "[P]laintiff was in [NY] at least once per month, and sometimes remained in [NY] for weeks at a time." *Id.*, *4.

- *Chen-Oyster v. Goldman*, 251 F. Supp. 579, 594 (S.D.N.Y. April 12, 2017). The plaintiff regularly traveled to and worked from the NY office, served clients in NY, and had meetings in the NY office. *Id.*, 594.

Finally, Plaintiff cites *Kraiem v. JonesTrading Institutional Servs. LLC.*, 492 F. Supp. 3d 184 (S.D.N.Y. 2020). There, the court did not decide the impact issue and assumed *arguendo* certain allegations could be considered. *Id.*, 200. Still, the court dismissed the NYSHRL and NYCHRL claims as they were based on conduct outside New York. *Id.*

The *Kraiem* case, which Plaintiff cites to support her NYSHRL and NYCHRL claims, underscores why those claims fail. *Kraiem* rejected speculative theories of New York impact, warning: "[i]f impact can be shown by a mere hope to work in New York down the line, the flood

3

gates would be open." *Id.*, 199. Plaintiff alleges merely she had a promotional opportunity in New York during Season 16 and speculates she would have had additional opportunities in Season 17. *Compl.*, ¶¶ 300, 311, 313-316. Those assertions are precisely the type of speculative and attenuated allegations *Kraiem* rejected.[1]

### B. THE ATLANTA ORDINANCE IS NOT SILENT AS TO RELIEF (COUNTS III AND VI).

Plaintiff's Atlanta Ordinance claims fail because the Ordinance provides no basis for the relief she seeks. Defendants do not challenge venue; the Ordinance limits enforcement to municipal processes and authorizes only municipal sanctions.

Article VI of Section 94-120 establishes a comprehensive enforcement framework. When proceeding through the Atlanta Human Rights Commission, Section 94-120(o) specifies available remedies, including directives to desist, licensing inquiries, and referrals for further investigation. The Ordinance does not authorize compensatory damages, punitive damages, or other individualized monetary relief Plaintiff demands.

Where enforcement proceeds through Atlanta Municipal Court, the remedies are likewise limited. Because the Ordinance assigns enforcement to the Municipal Court, a federal court adjudicating an Ordinance claim cannot expand the remedies beyond those available there. The Municipal Court's FAQ, titled *"What Are the Possible Outcomes of My Case?"*[2] confirms available outcomes include municipal fines, jail time, or court-ordered community service or educational programs.

---

[1] Plaintiff also cites *Regan v. Benchmark Co. LLC*, and *Ronen v. FlipCX, Inc.* Neither supports her theory. *Regan* involved a broker-dealer who actively served NY-based clients, not passive social-media observers. *Ronen* required concrete, contemporaneous evidence of intent to work in New York—such as maintaining a NY residence and professional ties—and expressly contrasted cases where plaintiffs lacked such intent and worked permanently elsewhere. Plaintiff alleges no comparable facts and relies instead on conjecture about future opportunities, a theory these cases distinguish and reject.

[2] https://court.atlantaga.gov/faqs

Plaintiff's interpretation also finds no support in judicial practice. No reported case in Georgia—or elsewhere—has awarded monetary damages to an employee under this Ordinance. Plaintiff identifies no such authority and instead asks this Court to create a new remedial entitlement that the City of Atlanta has never authorized and courts have never recognized. Federal courts may not rewrite municipal legislation by inferring remedies where the legislative body has specified otherwise. Because Plaintiff seeks relief the ordinance does not permit, her Atlanta Ordinance claims should be dismissed.

## C. PLAINTIFF SEXUAL HARASSMENT CLAIMS LACK MERIT (COUNTS I-III).

First, Plaintiff's opposition relies on authority that does not govern her statutory claims. Second, Plaintiff's allegations do not support vicarious liability, particularly where the conduct is alleged to be criminal, and not based on sex.

### i. Plaintiff Improperly Relies on Title VII and FLSA Cases.

Plaintiff's reliance on Title VII and FLSA cases—*Garrett v. City Univ. of N.Y.* (Title VII); *Badlam v. Reynolds Metals Co.* (Title VII); *Equal Employment Opportunity Comm'n v. A. Sam & Sons Produce Co.* (Title VII); *Legg v. Ulster Cnty.* (Title VII); *Arazi v. Cohen Bros. Realty Corp.* (FLSA)—is misplaced because the NYSHRL and NYCHRL are distinct statutory claims with their own standards for liability, scope, and remedies.

Moreover, the cases Plaintiff cites arise in factual contexts materially different from those alleged here, involving traditional employer-employee relationships and conduct within an ordinary employment setting. Plaintiff does not cite any case under the NYSHRL or the NYCHRL addressing harassment in the context of unscripted television production, where participants contractually assume a highly atypical working environment. Thus, her reliance on these cases does not address Defendants' arguments.

### ii.    Revenge Pornography Is a Criminal Act, Not Actionable Workplace Harassment, and Plaintiff Fails to Allege Harassment "Because of Sex."

Plaintiff's allegations foreclose vicarious liability. Plaintiff repeatedly asserts Moore's conduct was criminal and went "beyond the bounds of the show" (*Compl.*, ¶¶ 4-5, 10, 155, 180, 200-202, 373, 388, 403, 443, 451), meaning the conduct was for entirely personal reasons unrelated to RHOA.

Criminal acts committed for personal reasons fall outside the scope of employment and do not give rise to vicarious liability. *See Wade v. Findlay Mgmt.*, 253 Ga. App. 688, 690 (2002); *see Farzaneh v. Merit Constr. Co.*, 309 Ga. App. 637, 639 (2011). Plaintiff cannot simultaneously allege Moore acted outside the show's scope and also impose liability on Defendants conversely alleging the same conduct fell within the scope of employment.

Plaintiff's harassment theory also fails because she does not allege any challenged conduct occurred because of sex. Plaintiff's allegations describe an interpersonal feud, not sex-based animus. Plaintiff's conclusory allegation that Moore did not engage in similar conduct toward males is insufficient. This bare assertion, untethered from facts showing gender-based motivation rather than personal animus, is insufficient under the NYSHRL or NYCHRL. Nor does Plaintiff's labeling of Moore's conduct as "revenge pornography" alter that conclusion. Such conduct is not inherently gender-specific and could be directed at individuals of any gender.

### D.  PLAINTIFF'S CONTRACT CLAIMS FAIL (COUNTS VII-VIII).

Plaintiff does not address the specific contractual language at issue here—provisions expressly subject to amendment.[3] Settled law makes clear such language cannot create binding contractual obligations.

---

[3] Pursuant to the Talent Agreement: "[Plaintiff]'s employment hereunder shall be subject to [Defendants'] other applicable policies and procedures *as may be amended from time to time*, including without limitation, rules of

Plaintiff's reliance on *Lively v. Wayfarer Studios LLC* and *Crewe v. Rich Dad Educ.* is misplaced. In both cases, the courts did not confront the enforceability of unilaterally modifiable policies. Accordingly, neither decision supports Plaintiff's assertion that the provisions she cites form independent contractual obligations.

Similarly, *Pozner v. Fox Broad. Co*. did not involve the contractual language at issue and did not address policies that expressly provide for amendment. By contrast, the policies Plaintiff seeks to enforce are explicitly changeable, a feature that defeats any claim that they constitute binding contractual promises. As New York courts have repeatedly recognized, policies subject to unilateral amendment do not manifest the mutual assent required to form a contract. *See Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94 (1999). Accordingly, these terms are not binding on the parties.

### E. PLAINTIFF MISSTATES RATIFICATION TO ESTABLISH VICARIOUS LIABILITY UNDER GEORGIA LAW (COUNTS I-IX AND X).

Plaintiff's ratification theory of vicarious liability rests on misstating Georgia law. Plaintiff's primary authority, *Trimble v. Cir. City Stores*, merely acknowledges ratification as one theory of employer liability. It does not apply the doctrine or suggest ratification may be inferred whenever an employer becomes aware of alleged misconduct. *Trimble* does not define what conduct suffices to establish ratification and does not dispense with the requirement that an employer's actions demonstrate acceptance or approval of the challenged conduct.

Plaintiff also relies heavily on *Crawford v. Mangos Caribbean Rest.*, but that decision undermines her theory of ratification. Under *Crawford*, ratification requires ongoing tolerance or continued acceptance of the conduct. Plaintiff does not allege ongoing tolerance, but rather the opposite: Defendants contacted Plaintiff the very next day, promptly investigated, and within a

---

conduct, such as providing a respectful workplace (including anti-harassment and anti-discrimination . . .)." *See* Dkt. 25-1, Appendix 1, Paragraph 2(a).

week suspended Moore for the remainder of the season. *Compl*. ¶¶ 179-198. Defendants later publicly reiterated that disciplinary action when Episode 5 aired, further confirming the appropriateness of their response. *Id*. ¶ 273. Critically, Moore never returned to the show.[4] Taken together, these allegations are fatal to any ratification theory. They describe remedial action, not continued acceptance.

As *Trimble* does not establish the rule Plaintiff asserts, and *Crawford* forecloses her ratification theory, Plaintiff fails to plead vicarious liability under Georgia law.

### F.  PLAINTIFF'S IIED CLAIM FAILS (COUNT X).

Plaintiff's IIED claim fails because (1) Plaintiff concedes NY law does not apply, analyzing IIED exclusively under Georgia law; (2) Plaintiff misapplies Georgia precedent; and (3) Plaintiff's "contributing factor" theory misunderstands governing tort principles and cannot overcome the absence of proximate cause.

#### i.  Plaintiff Concedes New York Law Does Not Apply.

By failing to advance any opposition to Defendants' argument that New York law is inapplicable as the alleged conduct and injury occurred outside New York (*see, e.g., Padula v. Lilarn Properties Corp*., 84 N.Y.2d 519 (N.Y. 1994)), Plaintiff conceded this issue.[5]

#### ii.  Plaintiff Misapplies Georgia Precedent.

Plaintiff's reliance on Georgia authority does not address the circumstances presented here. First, Plaintiff relies on *Sevcech v. Ingles Markets, Inc*., 222 Ga. App. 221, 224 (1996), which requires the conduct be intentional and directed towards the complainant. In *Svecech*, the plaintiff witnessed her spouse's false arrest and asserted her observation rendered the conduct directed at

---

[4] Plaintiff's claim Defendants conditioned her future employment on reappearing with Moore also fails to salvage ratification. Moore was indefinitely suspended and never returned.

[5] Even if the Court were to consider Plaintiff's IIED claim under New York law, the analysis and result of a review under New York law are the same as under Georgia law.

her for purposes of IIED. *Id. Sevcech* does not rebut Defendants' authority that defamatory remarks made to others or to the public in general are classic examples of conduct that, though allegedly harmful to the plaintiff, were directed toward the hearer of the statements, not to the plaintiff, and thus is not actionable as IIED. *See Lively v. McDaniel*, 240 Ga. App. 132, 134 (1999). Likewise, Moore's conduct was not directed at Plaintiff because Plaintiff admittedly was not present when the conduct occurred.

Plaintiff's reliance on *Reid v. Waste Indus. USA, Inc.*, 345 Ga. App. 236 (2018), is likewise misplaced. *Reid* contains no analysis of the "directed at" requirement and therefore does not address the defect in Plaintiff's claim.

### iii.    Plaintiff's "Contributing Factor" Theory Is Irrelevant.

Plaintiff's reliance on a "contributing factor" theory does not salvage her IIED claim. Plaintiff cites *John Crane, Inc. v. Jones*, 278 Ga. 747 (2004), which addresses situations involving the concurring negligence of joint tortfeasors. It holds that "[w]here the injury is the result of the concurring negligence of two or more parties, they may be sued jointly or severally," and an action may be maintained against "two joint tort-feasors whose negligence contributes to produce an injury." *Id.*, 748-749.

Dispositively, the "contributing factor" doctrine would apply only if "the media" were alleged to be joint tortfeasors whose negligence contributed to the injury. However, "the media" are not parties to this action and are not alleged to have acted tortiously in concert with Defendants.

### G. PLAINTIFF FAILS TO OVERCOME THE EXPRESS ASSUMPTION OF RISK AND CONTRACTUAL RELEASE (COUNTS IX-X).

Plaintiff's tort claims are barred by the unambiguous contractual provisions she executed before participating in RHOA. The Talent Agreement contains both an express assumption of the risk and a broad release of claims inherent in unscripted television, defeating Plaintiff's attempt to

9

recast the consequences of that environment as actionable torts. Plaintiff's express assumption of risk not only operates as an independent bar to recovery, it also informs what conduct may plausibly be deemed "outrageous," "harassing," or "unforeseeable" in the context she knowingly chose. Plaintiff's opposition does not meaningfully address governing case law, misreads the contractual language, and relies on inapposite authority.

### i.    The Talent Agreement Covers IIED.

Plaintiff's threshold argument that the release does not encompass her IIED claim rests on a misreading of the Agreement. The release expressly discharges Defendants from claims arising out of Plaintiff's participation in the show, including claims for infliction of emotional distress.[6]

Plaintiff misconstrues the release by isolating the phrase "caused by negligent acts." As the language makes clear, negligence is only one category of conduct giving rise to liability. Plaintiff's suggestion that the release forecloses only negligence claims is untenable. The Agreement expressly lists defamation, false light, and intellectual-property infringement, confirming intentional torts fall squarely within the "Released Claims."

### ii.    Plaintiff's Authority Does Not Address Express Waivers or Comparable Releases.

Plaintiff's authority does not undermine enforceability of the Talent Agreement. For assumption of the risk, Plaintiff's dependence on *Arbegast v. Bd. of Educ. of S. New Berlin Cent. Sch.*, 65 N.Y.2d 161 (1985) is misplaced. *Arbegast* relies on CPLR 1411, which concerns implied assumption of risk and does not eliminate express assumption as a complete defense. *Id.*, 169-170. *Arbegast* expressly recognizes that when CPLR 1411 was enacted, "it had long been the law that

---

[6] The Talent Agreement is correctly block quoted in the fact section of the brief, and Defendants rely on the Agreement's actual language. Defendants note a minor scrivener's error in a later citation in their moving brief, which inadvertently adds "intentional" before "infliction of emotional distress."

a contractual limitation of liability for negligence or other fault of a party seeking to be relieved of his ordinary responsibility did not violate public policy." *Id.*

Plaintiff's reliance on *Turcotte v. Fell* and *Soundara v. AMB Sports* fares no better, which concern implied assumption of risk outside of the unscripted television context. Neither undermines the enforceability of Plaintiff's express assumption of risk here.

For IIED, *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821 (1993) and *Heiman v. Mayfield,* 300 Ga. App. 879 (2009) do not address IIED or unscripted television participant contracts and therefore do not speak to the issue presented. Neither case suggests releases like the one Plaintiff signed are unenforceable.

### iii.    Plaintiff Ignores Precedent Upholding Comparable Releases.

Plaintiff fails to refute the authority Defendants cited that enforced comparable assumption-of-risk and release provisions (for both IIED and negligence) in entertainment and analogous contexts. Plaintiff identifies no decision invalidating releases of emotional-distress claims under circumstances like these and offers no basis to distinguish Defendants' cases.

### iv.    Assumption of Risk Informs What Is "Outrageous," Harassing," or "Unforeseeable."

Assumption of risk serves both as a defense and as context. Plaintiff contractually acknowledged the nature of the unscripted television environment she chose to enter. Courts properly consider such acknowledgments in evaluating whether alleged conduct can plausibly be deemed "extreme and outrageous," "harassing," or "unforeseeable." *See, e.g., Lynch v. Javara, Inc.*, 2025 U.S. Dist. LEXIS 107062 (N.D. Ga. June 5, 2025).  Conduct that might be actionable in a traditional workplace does not automatically meet those standards when it occurs in an environment Plaintiff knowingly and expressly accepted. Plaintiff's contractual assumption therefore reinforces that her tort claims fail.

11

**v.    O.C.G.A. § 34-7-22 Does Not Void the Release.**

Although the statutory text of O.C.G.A. § 34-7-22 does not expressly limit its scope, the official commentary makes clear the provision addresses employer attempts to contract away liability for physical injuries and death—not claims for emotional distress or non-physical harms arising from voluntary participation in entertainment programming.

Notably, there is only one Georgia decision citing § 34-7-22, which declined to apply the statute. No case law exists extending § 34-7-22 to invalidate releases like the one here. Accordingly, § 34-7-22 does not categorically invalidate contractual releases and provides no basis for setting aside Plaintiff's agreement.

## CONCLUSION

Defendants respectfully request the Court grant their Motion and dismiss the Complaint in its entirety.

Dated: May 19, 2026
        New York, New York

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Dana G. Weisbrod*

By: _____

Dana G. Weisbrod
Paige C. Goldberg
666 Third Avenue, 28th Floor
New York, NY 10017
Telephone: (212) 545-4000
Facsimile: (212) 972-3213
Dana.Weisbrod@jacksonlewis.com
Paige.Goldberg@jacksonlewis.com

*Attorneys for Defendants*

12

**Certification of Compliance**

Pursuant to Section 3(C) of Your Honor's Individual Rules of Practice in Civil Cases, I certify that the attached Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) contains 3,000 words, excluding those parts of the document that are exempted. This certificate was prepared in reliance on the word-count function of the word-processing system Microsoft Word used to prepare the document.

Dated: May 19, 2026
      New York, New York

                        Respectfully submitted,

                        **JACKSON LEWIS P.C.**

                        */s/ Dana G. Weisbrod*

By: _____

                        Dana G. Weisbrod
                        Paige C. Goldberg
                        666 Third Avenue, 28th Floor
                        New York, NY 10017
                        Telephone: (212) 545-4000
                        Facsimile: (212) 972-3213
                        Dana.Weisbrod@jacksonlewis.com
                        Paige.Goldberg@jacksonlewis.com

                        *Attorneys for Defendants*

13